UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TAYLER GRUBB and JOSEPH MARRERO, on their own behalf and on behalf of a class of those similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:26-cv-1460 |
| MONROE COUNTY COUNCIL, MONROE COUNTY COMMISSIONERS, in their official capacities; MONROE COUNTY SHERIFF, in his official capacity, | ) | |
| Defendants. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief**

**Introduction**

1. The Monroe County Jail is outdated, overcrowded, dangerous, and grossly inadequate. The Sheriff has repeatedly pointed out its inadequacies. Monroe County has commissioned reports that note, in great detail, its inadequacies. The Jail was the subject of a class action lawsuit for declaratory and injunctive relief in 2008 that resulted in a private settlement agreement in 2009 that was supposed to expire in 2011 but that was extended in anticipation that Monroe County finally would take steps to resolve the constitutional problems in the facility. When this did not happen after 15 years the private settlement agreement was allowed to lapse last month in anticipation of new litigation

being filed to attempt to address the conditions, which grow worse as the facility ages. This is that new litigation brought by two prisoners currently in the Jail on their own behalf and on behalf of a class of those similarly situated. The conditions in the Monroe County Jail violate the Fourteenth Amendment rights of pre-trial detainees and the Eighth Amendment rights of prisoners being held post-conviction. Appropriate injunctive and declaratory relief should issue.

**Jurisdiction**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

**Parties**

6. Tayler Grubb is an adult person currently confined in the Monroe County Jail.

7. Joseph Marrero is an adult person currently confined in the Monroe County Jail.

8. The Monroe County Council is the fiscal body of Monroe County, Indiana. Ind. Code § 36-2-3-2.

9. The Monroe County Commissioners are the Monroe County executive, Ind. Code § 36-2-2-2, and as the county executive, have the statutory duty to "establish and maintain

a . . . county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind. Ct. App. 1994). They are sued in their official capacities.

10. The Monroe County Sheriff is required, by Indiana law, to "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). He is sued in his official capacity.

**Class action allegations**

11. This action is brought by plaintiffs on their own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

12. The class is defined as:

> all persons currently confined in the Monroe County Jail or who will be confined there in the future.

13. All the requirements of Rule 23(a) are met as:

a. The class is so numerous that joinder of all members is impractical. The jail regularly houses more than 240 prisoners and the membership of the class is constantly changing as prisoners enter and leave the facility.

b. There are questions of law or fact common the class: whether conditions in the Monroe County Jail violate the United States Constitution.

c. The claims of the representative parties are typical of those of the class.

d. The representative parties will fairly and adequately protect the interests of the class.

14. The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants have acted or refused to act in a manner generally applicable to the class,

thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

15. Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

**Factual allegations**

*General allegations*

16. The Monroe County Jail has been in operation since 1984 and had an original prisoner capacity of 128.

17. The number of beds in the facility has been increased over the years through double celling so that the Jail's maximum capacity is now approximately 287. This does not include 5 one-person segregation cells and 2 one-person holding cells, neither of which are permanent housing.

18. There are approximately 253 "secure beds," in the facility (which are beds in two- or one-person cells. This total number of secure beds does not include the 7 segregation and holding cells, as they are not permanent beds. There are 34 bunk beds in two different dormitory blocks. The Jail also has 5 segregation cells and two holding cells.

19. There are 51 beds for females in just two blocks.

20. Jails are overcrowded at 80% or more of its capacity as it is impossible to perform effective classification of prisoners when the percentage of capacity is higher than that.

21. Therefore, the Monroe County Jail's functional capacity is 80% of its available beds

or slightly more than 229 beds.

22. The Jail population is always or nearly always above its functional capacity. Between June 2 and July 3, 2026, the average population was slightly less than 260, or more than 90% of capacity. During that same time, the average population in the secure beds was nearly 233 persons, or more than 92% of the Jail's capacity.

23. The Jail is overcrowded.

24. Classification is essential to protect the safety of both prisoners and staff. For example, prisoners with mental and physical disabilities should be separated from those without disabilities, prisoners who are prone to be preyed upon should be separated from predators, prisoners who have previous problems with each other should be separated, *etc*.

25. The overcrowded conditions prevent adequate classification, producing dangerous conditions.

26. With only two female blocks, it is impossible to meaningfully classify female prisoners.

27. And the Jail's necessary attempts at classification highlight the problems with the Jail.

28. For example, the Jail attempts to place prisoners classified as having minimum or medium security concerns in one of two cell blocks, A or B.

29. A-Block has 16 cells with two beds in each and B-Block has 16 cells, all but one of

which has two beds.

30. Both blocks contain more prisoners than there are beds. As a result, prisoners are forced to sleep on mattresses on the floors of cells—three inmates to a cell—because the other two beds in the cells are occupied.

31. Some cells are large enough that the mattresses on the floor can be placed in plastic containers called “boats.” However, some of the cells are too small for that and the mattresses are placed directly on the floor.

32. Being forced to sleep on the floor is difficult and problematic.

33. Because of the size of the cells, prisoners must sleep directly next to the toilet/sink units in each cell.

34. Therefore, prisoners must be stepped over to use the toilet/sink unit and are frequently splashed with toilet water from the toilets being used.

35. This causes a great deal of tension.

36. Other cell blocks house more prisoners than there are beds and prisoners must sleep on the floor in those cells as well.

37. There is an area outside of the cells that is within the locked areas of the block. This is referred to as the “day room.”

38. Depending on the block they are in, prisoners are released into the day room for all of the day or for only a short period if they are in a disciplinary block or segregation block.

39. In the blocks that are overcrowded the day rooms have too many people in them to be used for vigorous physical exercise.

40. The day room contains showers and kiosks that can be used to make calls.

41. Many of the showers are broken and the overpopulation makes it difficult for the prisoners to share the kiosks, causing additional tension.

42. The day rooms contain tables with stools attached, but there are far fewer stools than prisoners in many of the cell blocks.

43. All meals are served to the prisoners in their cell blocks and therefore for those prisoners who do not have stools, meals are eaten standing up or in the cells.

44. The excessive number of prisoners causes a great deal of tension and there are frequent fights.

45. These fights are often not observed by the staff as there are no direct sight lines into the prisoners' living areas from any control areas where staff may be located. Instead, the Jail depends on cameras in the blocks and hourly checks by the staff. However, there are many areas that are not viewable on the cameras. Therefore, fights and assaults occur that staff never know about.

46. There is an outdoor recreation area but outdoor recreation is offered infrequently.

47. The Jail is over 40-years old.

48. It has serious HVAC problems, such that some blocks are so hot in the summer and cold in the winter that prisoners' health is put in jeopardy.

49. The facility is literally falling apart as cracks are visible in the walls and prisoners have been able to dislodge pieces of cement that can be used to injure others.

50. Plumbing fixtures are old, outdated, leak, and are difficult, if not impossible, to repair. This is particularly problematic for prisoners whose mattresses must be on the floor because of overcrowding and whose mattresses become wet.

51. The leaks provide a fertile environment for the growth of mold and the Sheriff's staff have attempted on numerous occasions to remediate the mold, without long-term success.

52. There is only one ADA-accessible cell in the entire facility and it is in a male-only block.

53. In a study commissioned by Monroe County, begun in 2020 and completed in 2021, the authors, Dr. Kenneth Ray of RJS Justice Services and Dr. Allen Beck of Justice Concepts, Inc., noted as follows in a summary finding:

> **FINDING 1: At 36 years old, It is evident that the Monroe County Jail has exceeded is structural and functional life cycle, despite recent renovation. The facility does not have sufficient bed capacity or inmate housing areas to consistently ensure Constitutional levels of inmate care, custody, or services from intake to discharge. The facility is incapable of accommodating the delivery of the array of contemporary, evidence based best correctional practices that are well known to improve community wellness, reduce incarceration rates, improve conditions of confinement or reduce civil liability. The operational efficiency of facility design is non-detectable. Consequently, Monroe County taxpayers are burdened with a facility that is unreasonably expensive to maintain and operate. County officials are burdened with a correctional facility that should be considered high risk for liability due to the real and potential risk of harm to inmates, staff, and the public.**

(Ex. 1 at 84 [pages cited are as assigned by the Court's ECF system]).

54. During a jail tour on November 25, 2025, which included members of the County Commissioners and the County Council, a staff person stated that there were 47 persons

in the facility that day with serious mental illnesses, but there were insufficient places in the Monroe County Jail to appropriately hold them.

55. The above study identified 53 problems in the Jail in addition to the inadequate bed capacity as follows:

1. CCTV Cameras are Damaged
2. Control Room
3. Corridors not Code Compliant
4. Diffusers and Lights
5. Dirty Diffusers and Grills and Registers
6. Drains and Dryer Vents Dirty
7. Existing Site limitations
8. Exit Signage is Dim or Non-Compliant
9. Exposed or Lay-In Ceilings Do Not Meet Standards
10. Fasteners and Piping Exposed
11. Graffiti
12. HVAC & Controls
13. Inadequate CCTV Coverage
14. Inadequate Counseling Areas
15. Inadequate Housing
16. Inadequate Housing for Segregation
17. Inadequate Isolation Cells
18. Inadequate Processing / Booking Area
19. Inadequate Program Space
20. Inadequate Public Lobby and Waiting
21. Inadequate Staff Areas
22. Intercoms are Not Working
23. Kitchen Storage
24. Lack of Electrical and Data Outlets
25. Lack of Medical Interview Areas
26. Lack of Medical Treatment Space
27. Lack of Padded Cells
28. Lack of Suicide Cells
29. Lacking ADA Compliance
30. Laundry
31. Lay-In Ceilings Do Not Meet Correction Standards
32. Lighting Outdated and Damaged or Missing
33. Lights Burnt Out or Damaged
34. Limited Separation of Contagious Inmates
35. Masonry Block
36. Masonry Cracking
37. Mold
38. No Segregation of Sexes or Special Needs Inmates
39. No Sick Beds
40. Old Kitchen Equipment
41. Plastic Laminate Counters and Cabinets
42. Plumbing Fixtures and Isolation Valves
43. Quarry Tile
44. Records Room
45. Secure Doors are not Shutting or Locking Properly
46. Security Door Controls and Security Hardware
47. Security Door Controls and Security Hardware
48. Sprinkler Heads and Piping Deterioration
49. Staff Amenities are Limited
50. Storage
51. Surface Mounted Conduit and Outlets
52. Vision Issues
53. Water Infiltration

(*Id.* at 85). Many, if not most, of these problems remain because they simply cannot be addressed and remedied in the existing facility.

56. A study of the Monroe County Jail in 2023 by RQAW, an architectural firm,

mentions "[i]nsufficient amount of space;" "lack of medical exam room and isolation cells—challenging to observe;" "[o]nly one (1) padded cell;" "the facility … lack[s] sufficient bed capacity and inmate housing areas;" "[t]he outdated design inhibits the implementation of contemporary correctional practices, increasing costs and inefficiencies;" "[t]here are significant liability concerns associated with the facility's outdated infrastructure, making it a high-risk proposition for county officials." (Ex. 2 at 7, 33).

57. A letter from the Sheriff dated September 13, 2024 also points out critical concerns at the Jail including inadequate fire safety protection, inadequate HVAC system, and inadequate locks on cell doors. (Exhibit 3).

58. The Monroe County Council and Commissioners have both had public meetings where the Sheriff and other persons testified to the numerous dangerous conditions at the Monroe County Jail.

*The prior litigation*

59. Defendants are well aware of the deficiencies in the Monroe County Jail and the Commissioners and Council have had ample opportunity to rectify the problems, but have failed to do so.

60. In 2008, a lawsuit for declaratory and injunctive relief was filed on behalf of a putative class of all current and future prisoners in the Jail alleging that the conditions in the facility were unconstitutional. *Richardson v. Monroe County Sheriff, et al.*, No. 1:08-cv-

174-RLY-JMS (S.D. Ind.).

61. The requested class was certified and on August 14, 2009, the parties submitted a private settlement agreement (*Id.*, Dkt. 52). On December 3, 2009, the Court found the private settlement agreement to be fair, reasonable, and adequate and it went into effect (*Id.*, Dkt. 62).

62. Under the private settlement agreement steps were to be taken to address the population pressures on the Jail, among other things.

63. The private settlement agreement provided that it would expire on October 1, 2011.

64. However, due to the fact that Monroe County officials indicated that they were attempting to address the population and other problems at the jail and were considering building a new facility, the plaintiffs in the *Richardson* case repeatedly agreed to extend the termination date of the private settlement agreement.

65. The County Commissioners did propose the building of a new facility and selected a potential site. However, on two occasions the County Council refused to fund the project.

66. On June 8, 2026, the *Richardson* case was dismissed after the expiration of the private settlement agreement and the Court stated that the dismissal of the case was "with prejudice as to this action only, but nothing precludes a future class action from being brought by a prisoner of the Monroe County Jail."

*The named plaintiffs*

TAYLOR GRUBB

67. Tayler Grubb is currently a prisoner in the Monroe County Jail and has been for almost a year.

68. He is awaiting trial and is also being held on a probation violation.

69. He is currently in B-Block where all the beds are full and people are sleeping on the floor.

70. He is not sleeping on the floor currently, although there is a third person in the cell on the floor. There is no room for a "boat," so the third prisoner's mattress is on the floor near the toilet.

71. Mr. Grubb was previously placed on the floor when he was in D-Block and experienced being splashed with liquid from the toilet when others in the cell used the toilet.

72. There is a great deal of tension in B-Block that is caused by overcrowding.

73. There are fights because of this.

74. There are frequently too many people in the day room area to exercise and his block is rarely offered outdoor recreation. This increases tension.

75. In B-Block the cells become brutally hot. There is little or no ventilation. This increases tension and is unhealthy.

76. During the winter when he was on D-Block the temperature on the block was 52°.

77. There are three showers in B-block. However, only two of them work and they are filthy.

78. He is aware that there are holes in the walls in various places and the walls can crumble.

79. He is aware of the enormous amount of mold throughout the Jail.

80. He has witnessed prisoners being taken advantage of by other prisoners and believes this problem may occur because of improper classification.

81. The only way for prisoners to submit grievances at the Jail is through the kiosk.

82. Mr. Grubb submitted a grievance concerning the overcrowding and other problems in the Monroe County Jail. He received a response stating that the Sheriff and his staff were attempting to deal with these problems. There was no opportunity provided on the kiosk to appeal this grievance further and he has therefore exhausted all grievances available to him.

JOSEPH MARRERO

83. Joseph Marrero is an adult resident of the State of Indiana who is currently confined in the Monro County Jail.

84. He is currently confined on D-Block in the Jail and earlier this year was confined on other blocks in the Jail.

85. All the beds in D-Block are full and there are some persons sleeping on the floor.

86. Prior to being in D-Block he was in A-Block, which was very overcrowded.

87. He anticipates being released back to A-Block or one of the other blocks in the near future.

88. On A-Block he was required to sleep on the floor because the beds were full.

89. It was too overcrowded to exercise.

90. He did not have a "boat," just the mattress on the floor.

91. When he was on the floor his head was towards the toilet at the front of the cell.

92. When his cellmates used the toilet the liquid from the toilet would splash on him.

93. Liquid from the toilet would seep into his mattress.

94. He witnessed frequent arguments and fights in A-Block. He believes this is caused by the tension caused by the overcrowding and the conditions in the jail.

95. Fights will occur that the jail staff knows nothing about.

96. There are only two kiosks on A-Unit for example. This is where phone calls can be made. But when the cells are so crowded people argue over using the kiosks.

97. The toilets and sinks frequently do not work and there is mold everywhere.

98. In D-Block, only one of the three showers actually works. People argue over using the showers.

99. There are cracks in the walls throughout the facility that are deep enough that one can hear the wind blowing through them.

100. The cell blocks get very hot. This causes tension and fights as well.

101. The temperature is currently so hot in D-Block that the officers leave the cell doors

unlocked all night so inmates can access the large fans that blow in the day room.

102. Prisoners are not classified properly and he has seen the stronger and younger prisons prey on and even rob the smaller and older prisoners.

103. There is only one handicapped accessible cell in the facility and it is in a male unit.

104. He has seen persons who use a wheelchair, but wheelchairs are not allowed in the cellblocks. As a result, some of these persons must sleep on the floor as they cannot access a bunk.

*Concluding allegations*

105. The conditions in the Monroe County Jail result in the denial of basic human needs and the minimal civilized measure of life's necessities, and amount to punishment.

106. The County Commissioners and the County Council, together as the county government in Monroe County, have utterly failed to take steps to ensure and protect the constitutional rights of the prisoners in the jail.

107. Although the Sheriff is not responsible for the overcrowding and the deteriorating and inadequate jail structure, the Sheriff is responsible for taking care of the prisoners in the jail and therefore is responsible for the fact that they are being housed in an unconstitutional environment.

108. Defendants have been on notice for years concerning the deficiencies in the Monroe County Jail but have failed to take the necessary steps to resolve the overcrowding and other problems. At all times they have acted with knowledge of the

conditions in the Monroe County Jail and have been deliberately indifferent to the substantial risk of serious harm to the prisoners caused by the conditions in the Jail.

109. The actions and inactions of the defendants are causing plaintiff and the putative class irreparable harm for which there is no adequate remedy at law.

110. At all times defendants have acted and have refused to act under color of state law.

**Claim for relief**

111. The conditions of the Monroe County Jail violate the Fourteenth Amendment to the United States Constitution as applied to pre-trial detainees and the Eighth Amendment to the United States Constitution as applied to convicted prisoners.

**Request for relief**

WHEREFORE, plaintiffs request that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Certify this case as a class action, with the class as defined above, and appoint undersigned counsel as class counsel pursuant to Federal Rule 23(g).

3. Declare that the actions and inactions of defendants violate the United States Constitution for the reasons noted above.

4. Enter a permanent injunction requiring defendants to take all steps necessary to ensure that the conditions of confinement at the Monroe County Jail comply with the United States Constitution.

5. Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

Kenneth J. Falk
Joshua T. Bleisch
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
jbleisch@aclu-in.org

Attorneys for Plaintiffs and the Putative Class