UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TAYLER GRUBB and JOSEPH MARRERO, on their own behalf and on behalf of a class of those similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:26-cv-01460-JPH-TAB |
| MONROE COUNTY COUNCIL, MONROE COUNTY COMMISSIONERS, in their official capacities, and MONROE COUNTY SHERIFF, in his official capacity, | ) | |
| Defendants. | ) | |

**MONROE COUNTY COMMISSIONERS' AND MONROE COUNTY SHERIFF'S ANSWER TO PLAINTIFFS' COMPLAINT**

Come now the Monroe County Commissioners and the Monroe County Sheriff (collectively, "Defendants"), by counsel, and answer Plaintiffs' Class Action Complaint for Declaratory and Injunctive Relief as follows:

**Introduction**

1. The Monroe County Jail is outdated, overcrowded, dangerous, and grossly inadequate. The Sheriff has repeatedly pointed out its inadequacies. Monroe County has commissioned reports that note, in great detail, its inadequacies. The Jail was the subject of a class action lawsuit for declaratory and injunctive relief in 2008 that resulted in a private settlement agreement in 2009 that was supposed to expire in 2011 but that was extended in anticipation that Monroe County finally would take steps to resolve the constitutional problems in the facility. When this did not happen after 15 years the private settlement agreement was allowed to lapse last month in anticipation of new litigation being filed to attempt to address the conditions, which grow worse

as the facility ages. This is that new litigation brought by two prisoners currently in the Jail on their own behalf and on behalf of a class of those similarly situated. The conditions in the Monroe County Jail violate the Fourteenth Amendment rights of pre-trial detainees and the Eighth Amendment rights of prisoners being held post-conviction. Appropriate injunctive and declaratory relief should issue.

**ANSWER:** Defendants deny that the jail is "dangerous." They admit that the jail is inadequate, but they deny that it is "grossly inadequate." Defendants admit that the jail is "overcrowded" in the sense that there are times when the jail does not have a permanently installed bed that is at least 12 inches off the floor for every inmate in the jail; however, Defendants deny that the inability to provide such a bed for every inmate violates the federal Constitution. Defendants deny the alleged constitutional violations. Defendants admit the remaining allegations in paragraph 1.

**Jurisdiction**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

**ANSWER:** Defendants admit the allegations in paragraph 2.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:** Defendants admit the allegations in paragraph 3.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** Defendants admit that the cited statutes and rule authorize federal courts to order declaratory relief when such relief is legally appropriate, but they deny the constitutional

violations alleged by the plaintiffs.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

**ANSWER:** Defendants admit that Plaintiffs bring this lawsuit under 42 U.S.C. § 1983 and further admit that 42 U.S.C. § 1983 authorizes lawsuits such as this, but they deny the alleged constitutional violations.

**Parties**

6. Tayler Grubb is an adult person currently confined in the Monroe County Jail.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Grubb was an adult person confined in the Monroe County Jail.

7. Joseph Marrero is an adult person currently confined in the Monroe County Jail.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Marrero was an adult person confined in the Monroe County Jail.

8. The Monroe County Council is the fiscal body of Monroe County, Indiana. Ind. Code § 36-2-3-2.

**ANSWER:** Defendants admit the allegations in paragraph 8.

9. The Monroe County Commissioners are the Monroe County executive, Ind. Code § 36-2-2-2, and as the county executive, have the statutory duty to "establish and maintain a . . .

county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind. Ct. App. 1994). They are sued in their official capacities.

**ANSWER:** Defendants admit the allegations in paragraph 9, but they deny the alleged constitutional violations.

10. The Monroe County Sheriff is required, by Indiana law, to "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). He is sued in his official capacity.

**ANSWER:** Defendants admit the allegations in paragraph 10, but they deny the alleged constitutional violations.

**Class action allegations**

11. This action is brought by plaintiffs on their own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

**ANSWER:** Defendants admit that Plaintiffs brought this action intending to have it certified as a class action, but they deny the alleged constitutional violations.

12. The class is defined as: all persons currently confined in the Monroe County Jail or who will be confined there in the future.

**ANSWER:** Defendants admit that Plaintiffs seek to have this action certified as a class action and want the Court to adopt their definition of the class, but they deny the constitutional violations alleged.

13. All the requirements of Rule 23(a) are met as:

a. The class is so numerous that joinder of all members is impractical. The jail regularly houses more than 240 prisoners, and the membership of the class is constantly changing as prisoners enter and leave the facility.

b. There are questions of law or fact common the class: whether conditions in the Monroe County Jail violate the United States Constitution.

c. The claims of the representative parties are typical of those of the class.

d. The representative parties will fairly and adequately protect the interests of the class.

**ANSWER:** Defendants admit the allegations in paragraph 13, but they deny the constitutional violations alleged.

14. The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants have acted or refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

**ANSWER:** Defendants deny the allegations in paragraph 14 as those allegations pertain to them.

15. Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

**ANSWER:** Defendants admit that if the Court decides to certify this action as a class action, the lawyers who have appeared for Plaintiff Grubb and Plaintiff Marrero are appropriate persons to be appointed as class counsel.

**Factual allegations**

*General allegations*

16. The Monroe County Jail has been in operation since 1984 and had an original prisoner capacity of 128.

**ANSWER:** Defendants admit the allegations in paragraph 16.

17. The number of beds in the facility has been increased over the years through double celling so that the Jail's maximum capacity is now approximately 287. This does not include 5 one-person segregation cells and 2 one-person holding cells, neither of which are permanent housing.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the jail's "maximum capacity" and neither admit nor deny that the jail's "maximum capacity is now approximately 287" but demand strict proof thereof. The Sheriff contends that the jail's current functional capacity is 186.

18. There are approximately 253 "secure beds," in the facility (which are beds in two- or one-person cells). This total number of secure beds does not include the 7 segregation and holding cells, as they are not permanent beds. There are 34 bunk beds in two different dormitory blocks. The Jail also has 5 segregation cells and two holding cells.

**ANSWER:** The Commissioners admit that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs; however, they lack knowledge or information sufficient to form a belief about the number of "secure beds in the jail (the term "secured bed" is not defined in the Indiana Jail Standards or

Seventh Circuit case law) and neither admit nor deny that there are approximately 253 "secured beds" in the jail but demand strict proof thereof. The Sheriff admits that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs; however, he denies that the number of "secure beds" (which term is not defined in the Indiana Jail Standards or Seventh Circuit case law) is approximately 253. The Sheriff contends that the jail's current functional capacity is 186.

19. There are 51 beds for females in just two blocks.

**ANSWER:** Defendants deny the allegation in paragraph 19. The Sheriff contends there are 46 beds in two blocks.

20. Jails are overcrowded at 80% or more of its capacity as it is impossible to perform effective classification of prisoners when the percentage of capacity is higher than that.

**ANSWER:** Defendants admit that some jail management and operation professionals say that a jail is "overcrowded" when 80% of the permanently installed beds are filled; however, Defendants deny that it is "impossible" to perform effective classification when 80% of a jail's permanently installed beds are filled. The Sheriff contends than when 80% of the jail's available beds in general population are full, it becomes difficult to make an appropriate cell and bed assignments.

21. Therefore, the Monroe County Jail's functional capacity is 80% of its available beds or slightly more than 229 beds.

**ANSWER:** The Commissioners admit that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs;

however, they lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the jail's "functional capacity" and demand strict proof thereof. The Sheriff admits that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs; however, he denies the plaintiffs' calculation of the "functional capacity" of the jail. The Sheriff contends that the jail's current functional capacity is 186.

22. The Jail population is always or nearly always above its functional capacity. Between June 2 and July 3, 2026, the average population was slightly less than 260, or more than 90% of capacity. During that same time, the average population in the secure beds was nearly 233 persons, or more than 92% of the Jail's capacity.

**ANSWER:** The Commissioners admit that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs; however, they lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the jail's "functional capacity" and demand strict proof thereof. The Sheriff admits that the current jail does not have enough permanently installed beds that are at least 12 inches off the floor to serve the County's needs; however, he denies the plaintiffs' calculation of the "functional capacity" of the jail. The Sheriff contends that the jail's current functional capacity is 186. The Sheriff admits that with increasing frequency, the number of inmates in the jail exceed the jail's functional capacity.

23. The Jail is overcrowded.

**ANSWER:** Defendants admit that the jail is "overcrowded" in the sense that there are times when the jail does not have a permanently installed bed that is at least 12 inches off the floor

for every inmate in the jail; however, Defendants deny that the periodic inability to provide such a bed for every inmate violates the federal Constitution. Defendants deny the alleged constitutional violations.

24. Classification is essential to protect the safety of both prisoners and staff. For example, prisoners with mental and physical disabilities should be separated from those without disabilities, prisoners who are prone to be preyed upon should be separated from predators, prisoners who have previous problems with each other should be separated, *etc*.

**ANSWER:** Defendants a deny that, as a rule, prisoners with physical disabilities must be separated from those without disabilities. They admit the remaining allegations in paragraph 24.

25. The overcrowded conditions prevent adequate classification, producing dangerous conditions.

**ANSWER:** Defendants deny the allegations in paragraph 25 but admit that overcrowded conditions make it increasingly difficult for the Sheriff to make appropriate cell and bed assignments.

26. With only two female blocks, it is impossible to meaningfully classify female prisoners.

**ANSWER:** Defendants deny the allegations in paragraph 26.

27. And the Jail's necessary attempts at classification highlight the problems with the Jail.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 27 and neither admit nor deny those allegations but demand strict proof thereof.

28. For example, the Jail attempts to place prisoners classified as having minimum or medium security concerns in one of two cell blocks, A or B.

**ANSWER:** The Commissioners lack knowledge or information sufficient to form a believe about the truth of the allegations in paragraph 28 and neither admit nor deny those allegations but demand strict proof thereof. Per the Sheriff, A and B blocks are for male prisoners only; however, the Sheriff admits that A and B blocks are minimum and medium blocks.

29. A-Block has 16 cells with two beds in each and B-Block has 16 cells, all but one of which has two beds.

**ANSWER:** Defendants admit the allegations in paragraph 29.

30. Both blocks contain more prisoners than there are beds. As a result, prisoners are forced to sleep on mattresses on the floors of cells—three inmates to a cell—because the other two beds in the cells are occupied.

**ANSWER:** Defendants admit that the allegations in paragraph 30 are sometimes true, but they deny that the allegations in paragraph 30 are always true.

31. Some cells are large enough that the mattresses on the floor can be placed in plastic containers called "boats." However, some of the cells are too small for that and the mattresses are placed directly on the floor.

**ANSWER:** Defendants admit that the allegations in paragraph 31.

32. Being forced to sleep on the floor is difficult and problematic.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 32 and neither admit nor deny those allegations but demand strict proof thereof.

33. Because of the size of the cells, prisoners must sleep directly next to the toilet/sink units in each cell.

**ANSWER:** Defendants deny the allegations in paragraph 33.

34. Therefore, prisoners must be stepped over to use the toilet/sink unit and are frequently splashed with toilet water from the toilets being used.

**ANSWER:** Defendants deny the allegations in paragraph 34.

35. This causes a great deal of tension.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegation in paragraph 35 and neither admit nor deny that allegation but demand strict proof thereof.

36. Other cell blocks house more prisoners than there are beds and prisoners must sleep on the floor in those cells as well.

**ANSWER:** Defendants admit when there are more prisoners in a cell than permanent beds, the additional inmate is issued a sleeping mattress. They deny that prisoners must sleep on the floor.

37. There is an area outside of the cells that is within the locked areas of the block. This is referred to as the "day room."

**ANSWER:** Defendants admit that each of the large housing units in the jail has a common area referred to as the "day room."

38. Depending on the block they are in, prisoners are released into the day room for all of the day or for only a short period if they are in a disciplinary block or segregation block.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 38 and neither admit nor deny those allegations but demand strict proof thereof.

39. In the blocks that are overcrowded the day rooms have too many people in them to be used for vigorous physical exercise.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 39 and neither admit nor deny those allegations but demand strict proof thereof.

40. The day room contains showers and kiosks that can be used to make calls.

**ANSWER:** Defendants admit that the housing units with "day rooms" also have showers and kiosks and that inmates can make phone calls at the kiosks.

41. Many of the showers are broken and the overpopulation makes it difficult for the prisoners to share the kiosks, causing additional tension.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 41 and neither admit nor deny those allegations but demand strict proof thereof.

42. The day rooms contain tables with stools attached, but there are far fewer stools than prisoners in many of the cell blocks.

**ANSWER:** Defendants admit that the day rooms contain tables with seating that might be described as "stools", and sometimes there may be more inmates than stools, but they lack knowledge or information sufficient to form a belief about the truth of the vague allegation that there are "far fewer stools than prisoners in many of the cell blocks" and neither admit nor deny that allegation but demand strict proof thereof.

43. All meals are served to the prisoners in their cell blocks and therefore for those prisoners who do not have stools, meals are eaten standing up or in the cells.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the vague allegations in paragraph 43 and neither admit nor deny those allegations but demand strict proof thereof.

44. The excessive number of prisoners causes a great deal of tension and there are frequent fights.

**ANSWER:** Defendants deny the allegations in paragraph 44.

45. These fights are often not observed by the staff as there are no direct sight lines into the prisoners' living areas from any control areas where staff may be located. Instead, the Jail depends on cameras in the blocks and hourly checks by the staff. However, there are many areas that are not viewable on the cameras. Therefore, fights and assaults occur that staff never know about.

**ANSWER:** Defendants admit that there are some areas in the jail that are not viewable by security cameras. Defendants admit that jail staff perform visual observation checks of the inmates in the jail on an hourly, if not more frequent, basis. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 45 and neither admit nor deny those allegations but demand strict proof thereof.

46. There is an outdoor recreation area, but outdoor recreation is offered infrequently.

**ANSWER:** Defendants admit that there is an outdoor recreation area. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 46 and neither admit nor deny those allegations but demand strict proof thereof.

47. The Jail is over 40-years old.

**ANSWER:** Defendants admit the allegations in paragraph 47.

48. It has serious HVAC problems, such that some blocks are so hot in the summer and cold in the winter that prisoners' health is put in jeopardy.

**ANSWER:** Defendants admit that the jail has had heating and air conditioning issues, but they lack knowledge or information sufficient to form a belief as to the truth of the allegation that prisoners' health has been put in jeopardy because of those issues and neither admit nor deny that allegation but demand strict proof thereof. Per the Sheriff, no inmates have sought medical care for climate related conditions.

49. The facility is literally falling apart as cracks are visible in the walls and prisoners have been able to dislodge pieces of cement that can be used to injure others.

**ANSWER:** Defendants admit that cracks are visible in certain walls. Defendants admit that the jail is old, is declining in physical condition, and has reached the end of its useful life. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that inmates have dislodged pieces of cement for use in injuring others and neither admit nor deny that allegation but demand strict proof thereof. Defendants deny all other allegations in paragraph 49.

50. Plumbing fixtures are old, outdated, leak, and are difficult, if not impossible, to repair. This is particularly problematic for prisoners whose mattresses must be on the floor because of overcrowding and whose mattresses become wet.

**ANSWER:** Defendants admit that the jail's plumbing fixtures are old, outdated, leak, and are difficult to repair. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 50 and neither admit nor deny those

allegations but demand strict proof thereof.

51. The leaks provide a fertile environment for the growth of mold and the Sheriff's staff have attempted on numerous occasions to remediate the mold, without long-term success.

**ANSWER:** Defendants admit that the Commissioners have attempted on numerous occasions to remediate mold in the jail. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 and neither admit nor deny those allegations but demand strict proof thereof.

52. There is only one ADA-accessible cell in the entire facility and it is in a male-only block.

**ANSWER:** Defendants deny the allegations in paragraph 52. Per the Sheriff, there are three ADA-accessible cells.

53. In a study commissioned by Monroe County, begun in 2020 and completed in 2021, the authors, Dr. Kenneth Ray of RJS Justice Services and Dr. Allen Beck of Justice Concepts, Inc., noted as follows in a summary finding:

> **FINDING 1: At 36 years old, It is evident that the Monroe County Jail has exceeded is structural and functional life cycle, despite recent renovation. The facility does not have sufficient bed capacity or inmate housing areas to consistently ensure Constitutional levels of inmate care, custody, or services from intake to discharge. The facility is incapable of accommodating the delivery of the array of contemporary, evidence based best correctional practices that are well known to improve community wellness, reduce incarceration rates, improve conditions of confinement or reduce civil liability. The operational efficiency of facility design is non-detectable. Consequently, Monroe County taxpayers are burdened with a facility that is unreasonably expensive to maintain and operate. County officials are burdened with a correctional facility that should be considered high risk for liability due to the real and potential risk of harm to inmates, staff, and the public.**

(Ex. 1 at 84 [pages cited are as assigned by the Court's ECF system]).

**ANSWER:** Defendants admit the assertions were published in the Ken Ray study, as

alleged in paragraph 53, but deny any constitutional violations alleged.

54. During a jail tour on November 25, 2025, which included members of the County Commissioners and the County Council, a staff person stated that there were 47 persons in the facility that day with serious mental illnesses, but there were insufficient places in the Monroe County Jail to appropriately hold them.

**ANSWER:** Defendants admit that they have concerns about the number of beds available to house inmates with serious mental illnesses, but they lack knowledge or information sufficient to form a belief about the truth of what an unidentified staff person might have said on November 25, 2025, and neither admit nor deny that allegation but demand strict proof thereof.

55. The above study identified 53 problems in the Jail in addition to the inadequate bed capacity as follows:

1. CCTV Cameras are Damaged
2. Control Room
3. Corridors not Code Compliant
4. Diffusers and Lights
5. Dirty Diffusers and Grills and Registers
6. Drains and Dryer Vents Dirty
7. Existing Site limitations
8. Exit Signage is Dim or Non-Compliant
9. Exposed or Lay-In Ceilings Do Not Meet Standards
10. Fasteners and Piping Exposed
11. Graffiti
12. HVAC & Controls
13. Inadequate CCTV Coverage
14. Inadequate Counseling Areas
15. Inadequate Housing
16. Inadequate Housing for Segregation
17. Inadequate Isolation Cells
18. Inadequate Processing / Booking Area
19. Inadequate Program Space
20. Inadequate Public Lobby and Waiting
21. Inadequate Staff Areas
22. Intercoms are Not Working
23. Kitchen Storage
24. Lack of Electrical and Data Outlets
25. Lack of Medical Interview Areas
26. Lack of Medical Treatment Space
27. Lack of Padded Cells
28. Lack of Suicide Cells
29. Lacking ADA Compliance
30. Laundry
31. Lay-In Ceilings Do Not Meet Correction Standards
32. Lighting Outdated and Damaged or Missing
33. Lights Burnt Out or Damaged
34. Limited Separation of Contagious Inmates
35. Masonry Block
36. Masonry Cracking
37. Mold
38. No Segregation of Sexes or Special Needs Inmates
39. No Sick Beds
40. Old Kitchen Equipment
41. Plastic Laminate Counters and Cabinets
42. Plumbing Fixtures and Isolation Valves
43. Quarry Tile
44. Records Room
45. Secure Doors are not Shutting or Locking Properly
46. Security Door Controls and Security Hardware
47. Security Door Controls and Security Hardware
48. Sprinkler Heads and Piping Deterioration
49. Staff Amenities are Limited
50. Storage
51. Surface Mounted Conduit and Outlets
52. Vision Issues
53. Water Infiltration

(*Id.* at 85). Many, if not most, of these problems remain because they simply cannot be addressed and remedied in the existing facility.

**ANSWER:** Defendants admit the study referenced in paragraph 55 above identified the 53 items but lack knowledge or information sufficient to form a belief about the truth of which of those items are "problems" which the plaintiffs claim "cannot be addressed and remedied in the exiting facility" and neither admit nor deny that allegation but demand strict proof thereof.

56. A study of the Monroe County Jail in 2023 by RQAW, an architectural firm, mentions "[i]nsufficient amount of space;" "lack of medical exam room and isolation cells—challenging to observe;" "[o]nly one (1) padded cell;" "the facility … lack[s] sufficient bed capacity and inmate housing areas;" "[t]he outdated design inhibits the implementation of contemporary correctional practices, increasing costs and inefficiencies;" "[t]here are significant liability concerns associated with the facility's outdated infrastructure, making it a high-risk proposition for county officials." (Ex. 2 at 7, 33).

**ANSWER:** Defendants admit that the quoted language appears in the Monroe County Justice Study done by RQAW attached as Exhibit 2.

57. A letter from the Sheriff dated September 13, 2024 also points out critical concerns at the Jail including inadequate fire safety protection, inadequate HVAC system, and inadequate locks on cell doors. (Exhibit 3).

**ANSWER:** Defendants admit the allegations in paragraph 57.

58. The Monroe County Council and Commissioners have both had public meetings where the Sheriff and other persons testified to the numerous dangerous conditions at the Monroe County Jail.

**ANSWER:** Defendants admit that there have been public meetings where the Sheriff and other persons have testified about the conditions at the Monroe County Jail, including some conditions that could be dangerous, but deny that there are "numerous dangerous" conditions and further deny the constitutional violations alleged.

*The prior litigation*

59. Defendants are well aware of the deficiencies in the Monroe County Jail, and the Commissioners and Council have had ample opportunity to rectify the problems but have failed to do so.

**ANSWER:** Defendants admit that they are aware of deficiencies in the Monroe County Jail but deny that they have failed to act in a reasonable manner to rectify the problems with the jail.

60. In 2008, a lawsuit for declaratory and injunctive relief was filed on behalf of a putative class of all current and future prisoners in the Jail alleging that the conditions in the facility were unconstitutional. *Richardson v. Monroe County Sheriff, et al.*, No. 1:08-cv-174-RLY-JMS (S.D. Ind.).

**ANSWER:** Defendants admit the filing of the *Richardson* case.

61. The requested class was certified and on August 14, 2009, the parties submitted a private settlement agreement (*Id.*, Dkt. 52). On December 3, 2009, the Court found the private settlement agreement to be fair, reasonable, and adequate and it went into effect (*Id.*, Dkt. 62).

**<u>ANSWER:</u>** Defendants admit the allegations in paragraph 61.

62. Under the private settlement agreement steps were to be taken to address the population pressures on the Jail, among other things.

**<u>ANSWER:</u>** Defendants admit the allegations in paragraph 62.

63. The private settlement agreement provided that it would expire on October 1, 2011.

**<u>ANSWER:</u>** Defendants admit the allegations in paragraph 63.

64. However, due to the fact that Monroe County officials indicated that they were attempting to address the population and other problems at the jail and were considering building a new facility, the plaintiffs in the *Richardson* case repeatedly agreed to extend the termination date of the private settlement agreement.

**<u>ANSWER:</u>** Defendants admit the allegations in paragraph 64.

65. The County Commissioners did propose the building of a new facility and selected a potential site. However, on two occasions the County Council refused to fund the project.

**<u>ANSWER:</u>** Defendants admit the allegations in paragraph 65.

66. On June 8, 2026, the *Richardson* case was dismissed after the expiration of the private settlement agreement and the Court stated that the dismissal of the case was "with prejudice as to this action only, but nothing precludes a future class action from being brought by a prisoner of the Monroe County Jail."

**ANSWER:** Defendants admit the allegations in paragraph 66.

*The named plaintiffs*

TAYLOR GRUBB

67. Tayler Grubb is currently a prisoner in the Monroe County Jail and has been for almost a year.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Grubb was confined in the Monroe County Jail.

68. He is awaiting trial and is also being held on a probation violation.

**ANSWER:** Defendants admit that on the date this Answer was prepared, the allegations in paragraph 68 were true.

69. He is currently in B-Block where all the beds are full, and people are sleeping on the floor.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Grubb was in B-block and the beds were full, but they deny that any prisoners were sleeping on the floor. Per the Sheriff, every inmate in B-block had a mattress.

70. He is not sleeping on the floor currently, although there is a third person in the cell on the floor. There is no room for a "boat," so the third prisoner's mattress is on the floor near the toilet.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Grubb was in a cell with two permanent beds and third person with a mattress. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 70 and neither admit nor deny those allegations but demand strict proof thereof.

71. Mr. Grubb was previously placed on the floor when he was in D-Block and experienced being splashed with liquid from the toilet when others in the cell used the toilet.

**ANSWER:** Defendants admit that at one time Grubb was housed in D-Block. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 71 and neither admit nor deny those allegations but demand strict proof thereof.

72. There is a great deal of tension in B-Block that is caused by overcrowding.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 72 and neither admit nor deny the allegation but demand strict proof thereof.

73. There are fights because of this.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 73 and neither admit nor deny the allegation but demand strict proof thereof.

74. There are frequently too many people in the day room area to exercise, and his block is rarely offered outdoor recreation. This increases tension.

**ANSWER:** Defendants deny the allegations in paragraph 74.

75. In B-Block the cells become brutally hot. There is little or no ventilation. This increases tension and is unhealthy.

**ANSWER:** Defendants admit that during extreme weather, areas of the jail experience temperature fluctuations. They lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 75 and neither admit nor deny the allegation but demand strict proof thereof.

76. During the winter when he was on D-Block the temperature on the block was 52°.

**ANSWER:** Defendants admit that during extreme weather, areas of the jail experience temperature fluctuations. They lack knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 76 and neither admit nor deny the allegation but demand strict proof thereof.

77. There are three showers in B-block. However, only two of them work and they are filthy.

**ANSWER:** Defendants admit there are three showers in B-Block. They lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 77 and neither admit nor deny those allegations but demand strict proof thereof.

78. He is aware that there are holes in the walls in various places and the walls can crumble.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Grubb may or may not be aware and neither admit nor deny the allegations in paragraph 78 but demand strict proof thereof.

79. He is aware of the enormous amount of mold throughout the Jail.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Grubb may or may not be aware and neither admit nor deny the allegations in paragraph 79 but demand strict proof thereof.

80. He has witnessed prisoners being taken advantage of by other prisoners and believes this problem may occur because of improper classification.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Grubb may or may not have witnessed and what knowledge or expertise Grubb may have with respect to inmate classification and neither admit nor deny the allegations in paragraph 80 but demand strict proof thereof.

81. The only way for prisoners to submit grievances at the Jail is through the kiosk.

**ANSWER:** Defendants deny the allegations in paragraph 81.

82. Mr. Grubb submitted a grievance concerning the overcrowding and other problems in the Monroe County Jail. He received a response stating that the Sheriff and his staff were

attempting to deal with these problems. There was no opportunity provided on the kiosk to appeal this grievance further and he has therefore exhausted all grievances available to him.

**ANSWER:** Defendants admit that Grubb filed a grievance and receive a response. They further admit that because his grievance was acknowledged and approved, there was no basis for an appeal. The grievance process does not contemplate appeals for inmates whose grievances are approved. To the extent that Grubb's grievance said that the relief he wanted was for the County to build a new jail, the Sheriff had no power to build a new jail in response to Grubb's grievance.

JOSEPH MARRERO

83. Joseph Marrero is an adult resident of the State of Indiana who is currently confined in the Monro County Jail.

**ANSWER:** Defendants admit that on the date this Answer was prepared, Marrero was confined in the Monroe County Jail.

84. He is currently confined on D-Block in the Jail and earlier this year was confined on other blocks in the Jail.

**ANSWER:** Defendants admit the allegations in paragraph 84.

85. All the beds in D-Block are full and there are some persons sleeping on the floor.

**ANSWER:** Defendants deny the allegations in paragraph 85. Per the Sheriff, on the date that this Answer was prepared, the allegations in paragraph 85 were untrue.

86. Prior to being in D-Block he was in A-Block, which was very overcrowded.

**ANSWER:** Defendants admit that at one time, Marrero had been housed in A-Block. They lack knowledge or information sufficient to admit or deny the truth of the remaining allegations in paragraph 86 and neither admit nor deny those allegations but demand strict proof thereof.

87. He anticipates being released back to A-Block or one of the other blocks in the near future.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Marrero may or may not anticipate and neither admit nor deny the allegations in paragraph 87 but demand strict proof thereof.

88. On A-Block he was required to sleep on the floor because the beds were full.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 88 and neither admit nor deny those allegations but demand strict proof thereof.

89. It was too overcrowded to exercise.

**ANSWER:** Defendants deny the allegations in paragraph 89.

90. He did not have a "boat," just the mattress on the floor.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 90 and neither admit nor deny those allegations but demand

strict proof thereof.

91. When he was on the floor his head was towards the toilet at the front of the cell.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 91 and neither admit nor deny those allegations but demand strict proof thereof.

92. When his cellmates used the toilet the liquid from the toilet would splash on him.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 92 and neither admit nor deny those allegations but demand strict proof thereof.

93. Liquid from the toilet would seep into his mattress.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 93 and neither admit nor deny those allegations but demand strict proof thereof.

94. He witnessed frequent arguments and fights in A-Block. He believes this is caused by the tension caused by the overcrowding and the conditions in the jail.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Marrero may or may not have witnessed and what he believes and neither admit nor deny the allegations in paragraph 94 but demand strict proof thereof.

95. Fights will occur that the jail staff knows nothing about.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 95 and neither admit nor deny those allegations but demand strict proof thereof.

96. There are only two kiosks on A-Unit for example. This is where phone calls can be made. But when the cells are so crowded people argue overusing the kiosks.

**ANSWER:** Defendants admit that there are two kiosks in A-Block. They lack knowledge or information sufficient to admit or deny the truth of the remaining allegations in paragraph 96 and neither admit nor deny those allegations but demand strict proof thereof.

97. The toilets and sinks frequently do not work and there is mold everywhere.

**ANSWER:** Defendants admit that the plumbing in the jail is aging and often does not function properly, but they deny that there is mold "everywhere."

98. In D-Block, only one of the three showers actually works. People argue overusing the showers.

**ANSWER:** Defendants admit that the plumbing in the jail is aging and often does not function properly. They lack knowledge or information sufficient to admit or deny the truth of the remaining allegations in paragraph 98 and neither admit nor deny those allegations but demand strict proof thereof.

99. There are cracks in the walls throughout the facility that are deep enough that one can hear the wind blowing through them.

**ANSWER:** Defendants admit there are cracks in some walls. They deny the cracks are "throughout the facility." They lack knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 99 and neither admit nor deny those allegations but demand strict proof thereof.

100. The cell blocks get very hot. This causes tension and fights as well.

**ANSWER:** Defendants admit that there have been times during extreme weather when the cell blocks have gotten hot. Defendants lack knowledge or information sufficient to form a belief about the truth that on the occasions when the cell blocks have gotten hot, the temperature caused tension or fights and neither admit nor deny those allegations but demand strict proof thereof.

101. The temperature is currently so hot in D-Block that the officers leave the cell doors unlocked all night so inmates can access the large fans that blow in the day room.

**ANSWER:** Defendants admit that there have been recent occasions when the temperature in D-Block was hot enough that jail staff decided not to close and lock the doors to the individual cells overnight so that inmates in that block could access the day room and air circulated in the day room could flow into the individual cells. Defendants deny all remaining allegations in paragraph 101.

102. Prisoners are not classified properly and he has seen the stronger and younger prisoners prey on and even rob the smaller and older prisoners.

**ANSWER:** Defendants deny that prisoners are not classified properly. Defendants lack knowledge or information sufficient to form a belief about the truth of what Marrero may or may not have witnessed and neither admit nor deny the remaining allegations in paragraph 102 but demand strict proof thereof.

103. There is only one handicapped accessible cell in the facility, and it is in a male unit.

**ANSWER:** Defendants deny that there is only one handicapped cell in a male unit. Per the Sheriff, there are three ADA-accessible cells in the jail.

104. He has seen persons who use a wheelchair, but wheelchairs are not allowed in the cellblocks. As a result, some of these persons must sleep on the floor as they cannot access a bunk.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Marrero may or may not have witnessed and deny the remaining allegations in paragraph 104.

*Concluding allegations*

105. The conditions in the Monroe County Jail result in the denial of basic human needs and the minimal civilized measure of life's necessities, and amount to punishment.

**ANSWER:** Defendants deny the allegations in paragraph 105.

106. The County Commissioners and the County Council, together as the county government in Monroe County, have utterly failed to take steps to ensure and protect the constitutional rights of the prisoners in the jail.

**ANSWER:** Defendants deny that the Commissioners have utterly failed to take steps to ensure and protect the constitutional rights of the prisoners in the jail.

107. Although the Sheriff is not responsible for the overcrowding and the deteriorating and inadequate jail structure, the Sheriff is responsible for taking care of the prisoners in the jail and therefore is responsible for the fact that they are being housed in an unconstitutional environment.

**ANSWER:** Defendants admit that the Sheriff is responsible for taking care of the prisoners in the jail, but deny the remaining allegations in paragraph 107.

108. Defendants have been on notice for years concerning the deficiencies in the Monroe County Jail but have failed to take the necessary steps to resolve the overcrowding and other problems. At all times they have acted with knowledge of the conditions in the Monroe County Jail and have been deliberately indifferent to the substantial risk of serious harm to the prisoners caused by the conditions in the Jail.

**ANSWER:** Defendants admit that they have been aware of deficiencies in the Monroe County Jail's design and operational capacity for a number of years, but they deny the remaining allegations in paragraph 108.

109. The actions and inactions of the defendants are causing plaintiff and the putative class irreparable harm for which there is no adequate remedy at law.

**ANSWER:** Defendants deny the allegations in paragraph 109.

110. At all times defendants have acted and have refused to act under color of state law.

**ANSWER:** Defendants admit that at all times relevant to Plaintiffs' claims in this action, their conduct was "under color of state law", but they deny the alleged constitutional violations.

**Claim for relief**

111. The conditions of the Monroe County Jail violate the Fourteenth Amendment to the United States Constitution as applied to pre-trial detainees and the Eighth Amendment to the United States Constitution as applied to convicted prisoners.

**ANSWER:** Defendants deny the allegations in paragraph 111.

WHEREFORE, the Monroe County Commissioners and the Monroe County Sheriff pray that the Court grant them all relief that is just and proper in the premises.

Respectfully submitted,

CLARK JOHNSON & KNIGHT, LTD.

*/s/ Pamela G. Schneeman*
Pamela G. Schneeman, Atty No. 18142-53

*Attorney for the Monroe County Commissioners and the Monroe County Sheriff*

CLARK JOHNSON & KNIGHT, LTD.
11590 N. Meridian St., Ste 650
Carmel, IN 46032
Phone: (317) 844-3830
Email: pschneeman@cjklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2026, a copy of the foregoing COMMISSIONERS' AND SHERIFF'S ANSWER TO PLAINTIFFS' COMPLAINT was filed electronically. I further certify that a copy of the same was served via the Court's CM-ECF system to:

Joshua Bleisch
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN 46202
jbleisch@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA
1031 E. Washington Street
Indianapolis, IN 46202
kfalk@aclu-in.org

Libby Y. Goodknight
Rachel J. Guin
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
lgoodknight@kdlegal.com
rguin@kdlegal.com

/s/ *Pamela G. Schneeman*
Pamela G. Schneeman

CLARK JOHNSON & KNIGHT, LTD.
11590 N. Meridian St., Ste 650
Carmel, IN 46032
Phone: (317) 844-3830
Email: pschneeman@cjklaw.com