UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TAYLER GRUBB and JOSEPH MARRERO, on their own behalf and on behalf of a class of those similarly situated,

Plaintiffs,

v.

MONROE COUNTY COUNCIL, MONROE COUNTY COMMISSIONERS, in their official capacities; MONROE COUNTY SHERIFF, in his official capacity,

Defendants.

Case No. 1:26-cv-01460-JPH-TAB

**DEFENDANT MONROE COUNTY COUNCIL'S ANSWER TO PLAINTIFFS' COMPLAINT**

Defendant Monroe County Council (the "Council"), for its Answer to the Complaint filed by Plaintiffs Tayler Grubb and Joseph Marrero (collectively, "Plaintiffs"), states as follows:

**Introduction**

1. The Monroe County Jail is outdated, overcrowded, dangerous, and grossly inadequate. The Sheriff has repeatedly pointed out its inadequacies. Monroe County has commissioned reports that note, in great detail, its inadequacies. The Jail was the subject of a class action lawsuit for declaratory and injunctive relief in 2008 that resulted in a private settlement agreement in 2009 that was supposed to expire in 2011 but that was extended in anticipation that Monroe County finally would take steps to resolve the constitutional problems in the facility. When this did not happen

after 15 years the private settlement agreement was allowed to lapse last month in anticipation of new litigation being filed to attempt to address the conditions, which grow worse as the facility ages. This is that new litigation brought by two prisoners currently in the Jail on their own behalf and on behalf of a class of those similarly situated. The conditions in the Monroe County Jail violate the Fourteenth Amendment rights of pre-trial detainees and the Eighth Amendment rights of prisoners being held post-conviction. Appropriate injunctive and declaratory relief should issue.

**ANSWER:** The Council denies that the jail is "dangerous." The Council admits that the jail is "outdated" and inadequate, but it denies that the jail is "grossly inadequate." The Council admits that the jail is "overcrowded" in the sense that there are times when the jail does not have a permanently installed bed for every inmate in the jail; however, the Council denies that the inability to provide such a bed for every inmate violates the United States Constitution. The Council denies the alleged constitutional violations. The Council admits that the Sheriff has pointed out the jail's inadequacies. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 2 and, therefore, denies the same.

## Jurisdiction

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

**ANSWER:** The Council admits the allegations in paragraph 2.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:** The Council admits the allegations in paragraph 3.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:** The Council admits that the cited statutes and rule authorize federal courts to order declaratory relief when such relief is legally appropriate; however, the Council denies the alleged constitutional violations.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

**ANSWER:** The Council admits that Plaintiffs bring this lawsuit under 42 U.S.C. § 1983 and further admit that 42 U.S.C. § 1983 authorizes lawsuits such as this; however, the Council denies the alleged constitutional violations.

**Parties**

6. Tayler Grubb is an adult person currently confined in the Monroe County Jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 6 and, therefore, denies the same.

7. Joseph Marrero is an adult person currently confined in the Monroe County Jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 7 and, therefore, denies the same.

8. The Monroe County Council is the fiscal body of Monroe County, Indiana. Ind. Code § 36-2-3-2.

**ANSWER:** The Council admits the allegations in paragraph 8.

9. The Monroe County Commissioners are the Monroe County executive, Ind. Code § 36-2-2-2, and as the county executive, have the statutory duty to "establish and maintain a . . . county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *Weatherholt v. Spencer County*, 639 N.E.2d 354, 356 (Ind. Ct. App. 1994). They are sued in their official capacities.

**ANSWER:** The Council admits the allegations in paragraph 9, but denies the alleged constitutional violations.

10. The Monroe County Sheriff is required, by Indiana law, to "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). He is sued in his official capacity.

**ANSWER:** The Council admits the allegations in paragraph 10, but denies the alleged constitutional violations.

## Class Action Allegations

11. This action is brought by plaintiffs on their own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

**ANSWER:** The Council admits that Plaintiffs brought this action intending to have it certified as a class action, but denies the alleged constitutional violations.

12. The class is defined as: all persons currently confined in the Monroe County Jail or who will be confined there in the future.

**ANSWER:** The Council admits that Plaintiffs seek to have this action certified as a class action and want the Court to adopt their definition of the class, but denies the alleged constitutional violations.

13. All the requirements of Rule 23(a) are met as:

a. The class is so numerous that joinder of all members is impractical. The jail regularly houses more than 240 prisoners, and the membership of the class is constantly changing as prisoners enter and leave the facility.

b. There are questions of law or fact common the class: whether conditions in the Monroe County Jail violate the United States Constitution.

c. The claims of the representative parties are typical of those of the class.

d. The representative parties will fairly and adequately protect the interests of the class.

**ANSWER:** The Council admits the allegations in paragraph 13, but denies the alleged constitutional violations.

14. The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants have acted or refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

**ANSWER:** The Council denies the allegations in paragraph 14 as those allegations pertain to the Council.

15. Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

**ANSWER:** The Council admits that if the Court decides to certify this action as a class action, the lawyers who have appeared for Plaintiffs are appropriate persons to be appointed as class counsel.

## Factual Allegations

### *General Allegations*

16. The Monroe County Jail has been in operation since 1984 and had an original prisoner capacity of 128.

**ANSWER:** The Council admits the allegations in paragraph 16.

17. The number of beds in the facility has been increased over the years through double celling so that the Jail's maximum capacity is now approximately 287. This does not include 5 one-person segregation cells and 2 one-person holding cells, neither of which are permanent housing.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 17 and, therefore, denies the same.

18. There are approximately 253 "secure beds," in the facility (which are beds in two-or one-person cells). This total number of secure beds does not include the 7 segregation and holding cells, as they are not permanent beds. There are 34 bunk beds in two different dormitory blocks. The Jail also has 5 segregation cells and two holding cells.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 18 and, therefore, denies the same.

19. There are 51 beds for females in just two blocks.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 19 and, therefore, denies the same.

20. Jails are overcrowded at 80% or more of its capacity as it is impossible to perform effective classification of prisoners when the percentage of capacity is higher than that.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 20 and, therefore, denies the same.

21. Therefore, the Monroe County Jail's functional capacity is 80% of its available beds or slightly more than 229 beds.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 21 and, therefore, denies the same.

22. The Jail population is always or nearly always above its functional capacity. Between June 2 and July 3, 2026, the average population was slightly less than 260, or more than 90% of capacity. During that same time, the average population in the secure beds was nearly 233 persons, or more than 92% of the Jail's capacity.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 22 and, therefore, denies the same.

23. The Jail is overcrowded.

**ANSWER:** The Council admits that the jail is "overcrowded" in the sense that there are times when the jail does not have a permanently installed bed for every inmate in the jail; however, the Council denies that the periodic inability to provide such a bed for every inmate violates the United States Constitution. The Council denies the alleged constitutional violations.

24. Classification is essential to protect the safety of both prisoners and staff. For example, prisoners with mental and physical disabilities should be separated from those without disabilities, prisoners who are prone to be preyed upon should be separated from predators, prisoners who have previous problems with each other should be separated, *etc*.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 24 and, therefore, denies the same.

25. The overcrowded conditions prevent adequate classification, producing dangerous conditions.

**ANSWER:** The Council admits that the jail is "overcrowded" in the sense that there are times when the jail does not have a permanently installed bed for every inmate in the jail. The Council denies that the jail is "dangerous."

26. With only two female blocks, it is impossible to meaningfully classify female prisoners.

**ANSWER:** The Council admits that the jail has two female blocks. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 26 and, therefore, denies the same.

27. And the Jail's necessary attempts at classification highlight the problems with the Jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 27 and, therefore, denies the same.

28. For example, the Jail attempts to place prisoners classified as having minimum or medium security concerns in one of two cell blocks, A or B.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 28 and, therefore, denies the same.

29. A-Block has 16 cells with two beds in each and B-Block has 16 cells, all but one of which has two beds.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 29 and, therefore, denies the same.

30. Both blocks contain more prisoners than there are beds. As a result, prisoners are forced to sleep on mattresses on the floors of cells—three inmates to a cell—because the other two beds in the cells are occupied.

**ANSWER:** The Council admits that inmates are sometimes required to sleep on mattresses on the floors of cells. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 30 and, therefore, denies the same.

31. Some cells are large enough that the mattresses on the floor can be placed in plastic containers called "boats." However, some of the cells are too small for that and the mattresses are placed directly on the floor.

**ANSWER:** The Council admits that inmates are sometimes required to sleep on mattresses on the floors of cells, which are placed in plastic containers called "boats." The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 31 and, therefore, denies the same.

32. Being forced to sleep on the floor is difficult and problematic.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 32 and, therefore, denies the same.

33. Because of the size of the cells, prisoners must sleep directly next to the toilet/sink units in each cell.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 33 and, therefore, denies the same.

34. Therefore, prisoners must be stepped over to use the toilet/sink unit and are frequently splashed with toilet water from the toilets being used.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 34 and, therefore, denies the same.

35. This causes a great deal of tension.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 35 and, therefore, denies the same.

36. Other cell blocks house more prisoners than there are beds and prisoners must sleep on the floor in those cells as well.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 36 and, therefore, denies the same.

37. There is an area outside of the cells that is within the locked areas of the block. This is referred to as the "day room."

**ANSWER:** The Council admits there is a day room in the jail. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 37 and, therefore, denies the same.

38. Depending on the block they are in, prisoners are released into the day room for all of the day or for only a short period if they are in a disciplinary block or segregation block.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 38 and, therefore, denies the same.

39. In the blocks that are overcrowded the day rooms have too many people in them to be used for vigorous physical exercise.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 39 and, therefore, denies the same.

40. The day room contains showers and kiosks that can be used to make calls.

**ANSWER:** The Council admits that the day room contains showers and kiosks. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 40 and, therefore, denies the same.

41. Many of the showers are broken and the overpopulation makes it difficult for the prisoners to share the kiosks, causing additional tension.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 41 and, therefore, denies the same.

42. The day rooms contain tables with stools attached, but there are far fewer stools than prisoners in many of the cell blocks.

**ANSWER:** The Council admits that the day room has tables with stools attached. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 42 and, therefore, denies the same.

43. All meals are served to the prisoners in their cell blocks and therefore for those prisoners who do not have stools, meals are eaten standing up or in the cells.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 43 and, therefore, denies the same.

44. The excessive number of prisoners causes a great deal of tension and there are frequent fights.

**ANSWER:** The Council denies that the number of prisoners in the jail is always "excessive." The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 44 and, therefore, denies the same.

45. These fights are often not observed by the staff as there are no direct sight lines into the prisoners' living areas from any control areas where staff may be located. Instead, the Jail depends on cameras in the blocks and hourly checks by the

staff. However, there are many areas that are not viewable on the cameras. Therefore, fights and assaults occur that staff never know about.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 45 and, therefore, denies the same.

46. There is an outdoor recreation area, but outdoor recreation is offered infrequently.

**ANSWER:** The Council admits that there is an outdoor recreation area at the jail. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 46 and, therefore, denies the same.

47. The Jail is over 40-years old.

**ANSWER:** The Council admits the allegations in paragraph 47.

48. It has serious HVAC problems, such that some blocks are so hot in the summer and cold in the winter that prisoners' health is put in jeopardy.

**ANSWER:** The Council admits that the jail has had heating and air conditioning issues. The Council asserts that, when the Sheriff has brought HVAC issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 48 and, therefore, denies the same.

49. The facility is literally falling apart as cracks are visible in the walls and prisoners have been able to dislodge pieces of cement that can be used to injure others.

**ANSWER:** The Council admits that cracks are visible in certain walls, that the jail is old, and that it is declining in physical condition. The Council is without

sufficient knowledge or information to admit or deny the remaining allegations in paragraph 49 and, therefore, denies the same.

50. Plumbing fixtures are old, outdated, leak, and are difficult, if not impossible, to repair. This is particularly problematic for prisoners whose mattresses must be on the floor because of overcrowding and whose mattresses become wet.

**ANSWER:** The Council admits that the jail's plumbing fixtures are old, outdated, leak, and are difficult to repair. The Council asserts that, when the Sheriff has brought plumbing issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 50 and, therefore, denies the same.

51. The leaks provide a fertile environment for the growth of mold and the Sheriff's staff have attempted on numerous occasions to remediate the mold, without long-term success.

**ANSWER:** The Council admits that the Commissioners have attempted on numerous occasions to remediate mold in the jail. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 51 and, therefore, denies the same.

52. There is only one ADA-accessible cell in the entire facility and it is in a male-only block.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 52 and, therefore, denies the same.

53. In a study commissioned by Monroe County, begun in 2020 and completed in 2021, the authors, Dr. Kenneth Ray of RJS Justice Services and Dr. Allen Beck of Justice Concepts, Inc., noted as follows in a summary finding:

> **FINDING 1: At 36 years old, It is evident that the Monroe County Jail has exceeded is structural and functional life cycle, despite recent renovation. The facility does not have sufficient bed capacity or inmate housing areas to consistently ensure Constitutional levels of inmate care, custody, or services from intake to discharge. The facility is incapable of accommodating the delivery of the array of contemporary, evidence based best correctional practices that are well known to improve community wellness, reduce incarceration rates, improve conditions of confinement or reduce civil liability. The operational efficiency of facility design is non-detectable. Consequently, Monroe County taxpayers are burdened with a facility that is unreasonably expensive to maintain and operate. County officials are burdened with a correctional facility that should be considered high risk for liability due to the real and potential risk of harm to inmates, staff, and the public.**

(Ex. 1 at 84 [pages cited are as assigned by the Court's ECF system]).

**ANSWER:** The Council admits the assertions were published in the study as quoted in paragraph 53, but denies the alleged constitutional violations.

54. During a jail tour on November 25, 2025, which included members of the County Commissioners and the County Council, a staff person stated that there were 47 persons in the facility that day with serious mental illnesses, but there were insufficient places in the Monroe County Jail to appropriately hold them.

**ANSWER:** The Council admits that members of the Council participated in a jail tour. The Council admits that concerns have been expressed about the number of beds available to house inmates with serious mental illnesses. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 54 and, therefore, denies the same.

55. The above study identified 53 problems in the Jail in addition to the inadequate bed capacity as follows:

1. CCTV Cameras are Damaged
2. Control Room
3. Corridors not Code Compliant
4. Diffusers and Lights
5. Dirty Diffusers and Grills and Registers
6. Drains and Dryer Vents Dirty
7. Existing Site limitations
8. Exit Signage is Dim or Non-Compliant
9. Exposed or Lay-In Ceilings Do Not Meet Standards
10. Fasteners and Piping Exposed
11. Graffiti
12. HVAC & Controls
13. Inadequate CCTV Coverage
14. Inadequate Counseling Areas
15. Inadequate Housing
16. Inadequate Housing for Segregation
17. Inadequate Isolation Cells
18. Inadequate Processing / Booking Area
19. Inadequate Program Space
20. Inadequate Public Lobby and Waiting
21. Inadequate Staff Areas
22. Intercoms are Not Working
23. Kitchen Storage
24. Lack of Electrical and Data Outlets
25. Lack of Medical Interview Areas
26. Lack of Medical Treatment Space
27. Lack of Padded Cells
28. Lack of Suicide Cells
29. Lacking ADA Compliance
30. Laundry
31. Lay-In Ceilings Do Not Meet Correction Standards
32. Lighting Outdated and Damaged or Missing
33. Lights Burnt Out or Damaged
34. Limited Separation of Contagious Inmates
35. Masonry Block
36. Masonry Cracking
37. Mold
38. No Segregation of Sexes or Special Needs Inmates
39. No Sick Beds
40. Old Kitchen Equipment
41. Plastic Laminate Counters and Cabinets
42. Plumbing Fixtures and Isolation Valves
43. Quarry Tile
44. Records Room
45. Secure Doors are not Shutting or Locking Properly
46. Security Door Controls and Security Hardware
47. Security Door Controls and Security Hardware
48. Sprinkler Heads and Piping Deterioration
49. Staff Amenities are Limited
50. Storage
51. Surface Mounted Conduit and Outlets
52. Vision Issues
53. Water Infiltration

(*Id.* at 85). Many, if not most, of these problems remain because they simply cannot be addressed and remedied in the existing facility.

**ANSWER:** The Council admits that the study referenced in paragraph 55 above identified the 53 items. The Council asserts that it and the Commissioners have appropriated funds via the American Rescue Plan Act to address issues related to locking doors for immediate security reasons. The Council lacks sufficient knowledge or information to admit or deny whether any of the other items identified are "problems" that Plaintiffs claim "cannot be addressed and remedied in the existing facility" and, therefore, denies the same.

56. A study of the Monroe County Jail in 2023 by RQAW, an architectural firm, mentions "[i]nsufficient amount of space;" "lack of medical exam room and

isolation cells—challenging to observe;" "[o]nly one (1) padded cell;" "the facility … lack[s] sufficient bed capacity and inmate housing areas;" "[t]he outdated design inhibits the implementation of contemporary correctional practices, increasing costs and inefficiencies;" "[t]here are significant liability concerns associated with the facility's outdated infrastructure, making it a high-risk proposition for county officials." (Ex. 2 at 7, 33).

**ANSWER:** The Council admits that the quoted language appears in the Monroe County Justice Study done by RQAW attached as Exhibit 2.

57. A letter from the Sheriff dated September 13, 2024 also points out critical concerns at the Jail including inadequate fire safety protection, inadequate HVAC system, and inadequate locks on cell doors. (Exhibit 3).

**ANSWER:** The Council admits the allegations in paragraph 57.

58. The Monroe County Council and Commissioners have both had public meetings where the Sheriff and other persons testified to the numerous dangerous conditions at the Monroe County Jail.

**ANSWER:** The Council admits that there have been public meetings where the Sheriff and other persons have testified about the conditions at the jail, including some conditions that could be dangerous; however, the Council denies that there are "numerous dangerous" conditions at the jail and further deny the alleged constitutional violations.

*The Prior Litigation*

59. Defendants are well aware of the deficiencies in the Monroe County Jail, and the Commissioners and Council have had ample opportunity to rectify the problems but have failed to do so.

**ANSWER:** The Council admits that it is aware of deficiencies in the Monroe County Jail but denies that it has failed to act in a reasonable manner to rectify the problems with the jail. Among other things, the Council asserts that, when the Sheriff has brought HVAC and plumbing issues to the Council's attention, the Council has appropriated funds to address those issues. Moreover, the Council approved the hiring of a new maintenance person for the jail to ensure that any maintenance issues were promptly addressed.

60. In 2008, a lawsuit for declaratory and injunctive relief was filed on behalf of a putative class of all current and future prisoners in the Jail alleging that the conditions in the facility were unconstitutional. *Richardson v. Monroe County Sheriff, et al.*, No. 1:08-cv-174-RLY-JMS (S.D. Ind.).

**ANSWER:** The Council admits the filing of the *Richardson* case.

61. The requested class was certified and on August 14, 2009, the parties submitted a private settlement agreement (*Id.*, Dkt. 52). On December 3, 2009, the Court found the private settlement agreement to be fair, reasonable, and adequate and it went into effect (*Id.*, Dkt. 62).

**ANSWER:** The Council admits the allegations in paragraph 61.

62. Under the private settlement agreement steps were to be taken to address the population pressures on the Jail, among other things.

**ANSWER:** The Council admits the allegations in paragraph 62.

63. The private settlement agreement provided that it would expire on October 1, 2011.

**ANSWER:** The Council admits the allegations in paragraph 63.

64. However, due to the fact that Monroe County officials indicated that they were attempting to address the population and other problems at the jail and were considering building a new facility, the plaintiffs in the *Richardson* case repeatedly agreed to extend the termination date of the private settlement agreement.

**ANSWER:** The Council admits the allegations in paragraph 64.

65. The County Commissioners did propose the building of a new facility and selected a potential site. However, on two occasions the County Council refused to fund the project.

**ANSWER:** The Council admits the Commissioners proposed that Monroe County purchase a piece of property on which to build a new jail. The Council admits that, at two meetings in May 2026, the Council did not unanimously approve to fund the purchase of this particular piece of property the Commissioners want Monroe County to purchase in order to build a new jail. However, the Council has identified at least two alternative proposals to the Commissioners' proposal, including one alternative proposal that would involve the building of a new jail on a piece of

property that the County already owns. The Council denies any suggestion that it has "refused to fund" efforts for a new or improved jail in Monroe County.

66. On June 8, 2026, the *Richardson* case was dismissed after the expiration of the private settlement agreement and the Court stated that the dismissal of the case was "with prejudice as to this action only, but nothing precludes a future class action from being brought by a prisoner of the Monroe County Jail."

**ANSWER:** The Council admits the allegations in paragraph 66.

*The Named Plaintiffs*

TAYLOR GRUBB

67. Tayler Grubb is currently a prisoner in the Monroe County Jail and has been for almost a year.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 67 and, therefore, denies the same.

68. He is awaiting trial and is also being held on a probation violation.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 68 and, therefore, denies the same.

69. He is currently in B-Block where all the beds are full, and people are sleeping on the floor.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 69 and, therefore, denies the same.

70. He is not sleeping on the floor currently, although there is a third person in the cell on the floor. There is no room for a "boat," so the third prisoner's mattress is on the floor near the toilet.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 70 and, therefore, denies the same.

71. Mr. Grubb was previously placed on the floor when he was in D-Block and experienced being splashed with liquid from the toilet when others in the cell used the toilet.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 71 and, therefore, denies the same.

72. There is a great deal of tension in B-Block that is caused by overcrowding.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 72 and, therefore, denies the same.

73. There are fights because of this.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 73 and, therefore, denies the same.

74. There are frequently too many people in the day room area to exercise, and his block is rarely offered outdoor recreation. This increases tension.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 74 and, therefore, denies the same.

75. In B-Block the cells become brutally hot. There is little or no ventilation. This increases tension and is unhealthy.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 75 and, therefore, denies the same.

76. During the winter when he was on D-Block the temperature on the block was 52°.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 76 and, therefore, denies the same.

77. There are three showers in B-block. However, only two of them work and they are filthy.

**ANSWER:** The Council admits that the plumbing in the jail is aging and often does not function properly. The Council asserts that, when the Sheriff has brought plumbing issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 77 and, therefore, denies the same.

78. He is aware that there are holes in the walls in various places and the walls can crumble.

**ANSWER:** The Council admits that cracks are visible in certain walls, that the jail is old, and that it is declining in physical condition. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 78 and, therefore, denies the same.

79. He is aware of the enormous amount of mold throughout the Jail.

**ANSWER:** The Council admits that there have been attempts to remediate mold in the jail. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 79 and, therefore, denies the same.

80. He has witnessed prisoners being taken advantage of by other prisoners and believes this problem may occur because of improper classification.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 80 and, therefore, denies the same.

81. The only way for prisoners to submit grievances at the Jail is through the kiosk.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 81 and, therefore, denies the same.

82. Mr. Grubb submitted a grievance concerning the overcrowding and other problems in the Monroe County Jail. He received a response stating that the Sheriff and his staff were attempting to deal with these problems. There was no opportunity provided on the kiosk to appeal this grievance further and he has therefore exhausted all grievances available to him.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 82 and, therefore, denies the same.

JOSEPH MARRERO

83. Joseph Marrero is an adult resident of the State of Indiana who is currently confined in the Monro County Jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 83 and, therefore, denies the same.

84. He is currently confined on D-Block in the Jail and earlier this year was confined on other blocks in the Jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 84 and, therefore, denies the same.

85. All the beds in D-Block are full and there are some persons sleeping on the floor.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 85 and, therefore, denies the same.

86. Prior to being in D-Block he was in A-Block, which was very overcrowded.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 86 and, therefore, denies the same.

87. He anticipates being released back to A-Block or one of the other blocks in the near future.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 87 and, therefore, denies the same.

88. On A-Block he was required to sleep on the floor because the beds were full.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 88 and, therefore, denies the same.

89. It was too overcrowded to exercise.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 89 and, therefore, denies the same.

90. He did not have a "boat," just the mattress on the floor.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 90 and, therefore, denies the same.

91. When he was on the floor his head was towards the toilet at the front of the cell.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 91 and, therefore, denies the same.

92. When his cellmates used the toilet the liquid from the toilet would splash on him.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 92 and, therefore, denies the same.

93. Liquid from the toilet would seep into his mattress.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 93 and, therefore, denies the same.

94. He witnessed frequent arguments and fights in A-Block. He believes this is caused by the tension caused by the overcrowding and the conditions in the jail.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 94 and, therefore, denies the same.

95. Fights will occur that the jail staff knows nothing about.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 95 and, therefore, denies the same.

96. There are only two kiosks on A-Unit for example. This is where phone calls can be made. But when the cells are so crowded people argue overusing the kiosks.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 96 and, therefore, denies the same.

97. The toilets and sinks frequently do not work and there is mold everywhere.

**ANSWER:** The Council admits that the plumbing in the jail is aging and often does not function properly. The Council admits that there have been attempts to remediate mold in the jail. The Council asserts that, when the Sheriff has brought plumbing issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 97 and, therefore, denies the same.

98. In D-Block, only one of the three showers actually works. People argue over using the showers.

**ANSWER:** The Council admits that the plumbing in the jail is aging and often does not function properly. The Council asserts that, when the Sheriff has brought plumbing issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to

admit or deny the remaining allegations in paragraph 98 and, therefore, denies the same.

99. There are cracks in the walls throughout the facility that are deep enough that one can hear the wind blowing through them.

**ANSWER:** The Council admits that cracks are visible in certain walls, that the jail is old, and that it is declining in physical condition. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 99 and, therefore, denies the same.

100. The cell blocks get very hot. This causes tension and fights as well.

**ANSWER:** The Council admits that there have been times during extreme weather when the cell blocks have gotten hot. The Council asserts that, when the Sheriff has brought HVAC issues to the Council's attention, the Council has appropriated funds to address those issues. The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 100 and, therefore, denies the same.

101. The temperature is currently so hot in D-Block that the officers leave the cell doors unlocked all night so inmates can access the large fans that blow in the day room.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 101 and, therefore, denies the same.

102. Prisoners are not classified properly and he has seen the stronger and younger prisoners prey on and even rob the smaller and older prisoners.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the allegations in paragraph 102 and, therefore, denies the same.

103. There is only one handicapped accessible cell in the facility, and it is in a male unit.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 103 and, therefore, denies the same.

104. He has seen persons who use a wheelchair, but wheelchairs are not allowed in the cellblocks. As a result, some of these persons must sleep on the floor as they cannot access a bunk.

**ANSWER:** The Council is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 104 and, therefore, denies the same.

*Concluding Allegations*

105. The conditions in the Monroe County Jail result in the denial of basic human needs and the minimal civilized measure of life's necessities, and amount to punishment.

**ANSWER:** The Council denies the allegations in paragraph 105.

106. The County Commissioners and the County Council, together as the county government in Monroe County, have utterly failed to take steps to ensure and protect the constitutional rights of the prisoners in the jail.

**ANSWER:** The Council denies that it has utterly failed to take steps to ensure and protect the constitutional rights of the prisoners in the jail.

107. Although the Sheriff is not responsible for the overcrowding and the deteriorating and inadequate jail structure, the Sheriff is responsible for taking care of the prisoners in the jail and therefore is responsible for the fact that they are being housed in an unconstitutional environment.

**ANSWER:** The Council admits that the Sheriff is responsible for taking care of the prisoners in the jail, but denies the remaining allegations in paragraph 107 and denies the alleged constitutional violations.

108. Defendants have been on notice for years concerning the deficiencies in the Monroe County Jail but have failed to take the necessary steps to resolve the overcrowding and other problems. At all times they have acted with knowledge of the conditions in the Monroe County Jail and have been deliberately indifferent to the substantial risk of serious harm to the prisoners caused by the conditions in the Jail.

**ANSWER:** The Council admits that it has been aware of deficiencies in the Monroe County Jail's design and operational capacity for a number of years, but denies the remaining allegations in paragraph 108 and denies the alleged constitutional violations.

109. The actions and inactions of the defendants are causing plaintiff and the putative class irreparable harm for which there is no adequate remedy at law.

**ANSWER:** The Council denies the allegations in paragraph 109.

110. At all times defendants have acted and have refused to act under color of state law.

**ANSWER:** The Council admits that at all times relevant to Plaintiffs' claims in this action, its conduct was "under color of state law", but it denies the alleged constitutional violations.

**Claim for Relief**

111. The conditions of the Monroe County Jail violate the Fourteenth Amendment to the United States Constitution as applied to pre-trial detainees and the Eighth Amendment to the United States Constitution as applied to convicted prisoners.

**ANSWER:** The Council denies the allegations in paragraph 111.

WHEREFORE, the Monroe County Council prays that the Court grant it all relief that is just and proper in the premises.

**AFFIRMATIVE DEFENSES**

1. The Council denies all allegations in Plaintiffs' Complaint not heretofore specifically admitted or denied.

2. Subject to a reasonable opportunity for investigation and discovery, the Complaint fails to state a claim upon which relief can be granted.

3. Subject to a reasonable opportunity for investigation and discovery, Plaintiffs lack standing to bring their claim for relief.

4. Subject to a reasonable opportunity for investigation and discovery, Plaintiffs' claim for relief is not ripe for judicial review.

5. Subject to a reasonable opportunity for investigation and discovery, Plaintiffs' claim for relief is moot.

6. Discovery and investigation are incomplete, and the Council does not and cannot reasonably be expected to know whether additional affirmative defenses may be applicable. The Council therefore reserves the right to add additional affirmative defenses and other defenses as may be applicable and appropriate during the pendency of this action.

Respectfully submitted,

Date: August 21, 2026

Libby Yin Goodknight
Libby Yin Goodknight, Attorney No. 20880-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Telephone: (317) 636-4341 (Main)
(317) 238-6315 (Direct)
Facsimile: (317) 636-1507
Email: lgoodknight@kdlegal.com

Rachel J. Guin, Attorney No. 31722-02
KRIEG DeVAULT LLP
505 East Washington Boulevard
Fort Wayne, Indiana 46802
Telephone: (260) 422-9454 (Main)
(260) 422-9456 (Direct)
Facsimile: (260) 422-1622
Email: rguin@kdlegal.com

*Attorneys for Monroe County Council*

KD_25409280_3.docx